IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION



FILED

03 AUG 27 PM 4:00

U.S. DISTRICT COURT
N.D. OF ALABAMA

VAE NORTRAK NORTH AMERICA,
INC., et al.,

    Plaintiffs,

v.

PROGRESS RAIL SERVICES
CORPORATION,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.
03-AR-1480-M

**ENTERED**

AUG 27 2003

## MEMORANDUM OPINION

Five attorneys who are not admitted generally to practice in this court applied for leave to appear *pro hac vice* for their respective clients in the above-styled case.  Their motions seeking admission *pro hac vice* were granted conditionally.  John R. Crossan and James R. Sullivan of the Chicago firm of Chapman & Cutler, appear *pro hac vice* for the three named plaintiffs, along with Will Hill Tankersley, Jr. and John E. Getty of the Birmingham firm of Balch & Bingham.  Glenn A. Ballard, Jr., Albert B. Kimball and Ken A. Rowald of the Houston firm of Bracewell & Patterson appear *pro hac vice* for the defendant, along with Samuel H. Franklin and John G. Thompson, Jr. of the Birmingham firm of Lightfoot, Franklin & White.  Each of the orders granting the motions filed by the special admittees contains the following language:

> The motion is well taken and is granted, **but with the understanding and on the condition that he will be physically present at all hearings conducted in the case unless in response to his prior written motion he has**



**been excused.**

(emphasis in originals).

On July 28, 2003, the defendant filed a motion to dismiss plaintiffs' action, or for a stay, claiming that there is an indispensable party that is neither named in the complaint nor excused from participating as a plaintiff.  Defendant's motion was set for hearing on this court's regular motion docket on August 22, 2003.  The clerk's notice of that hearing, routinely sent to all counsel in all cases appearing on the motion docket, provided, *inter alia*:

> **Attendance**: Counsel are not required to attend a motion docket.  Absence of counsel does not signify abandonment of, or consent to, a motion.

On August 18, 2003, plaintiffs and defendant filed what they styled a "Joint Motion for Standing Order Excusing *Pro Hac* Counsel from Appearing in Person."  On August 19, 2003, the court denied the said motion without opinion.

Despite the fact that no request for oral argument was lodged by plaintiffs or by defendant, Will Hill Tankersley, Jr., as counsel for plaintiffs, and Samuel H. Franklin, as counsel for defendant, appeared at the August 22, 2003 motion docket and orally argued defendant's motion to dismiss.  No *pro hac vice* counsel appeared.  During that oral argument the court informed counsel that an opinion explaining the court's denial of the joint motion for a standing order excusing *pro hac vice* counsel from appearing

2

in person would be written.  This is that opinion.

There are certainly valid reasons for a lawyer who is not admitted to practice regularly in a particular court to be granted the right to appear in a particular case in which that lawyer's client is a party.  The rules of this court clearly recognize the concept of *pro hac vice* admission.  In fact, the practice of admitting counsel from another jurisdiction to practice *pro hac vice* is a custom that was recognized at least as early as 1629 by English judges of Common Pleas. *See Thursby v. Warren*, 4 Car. 1, 79 Eng. Rep. 738 (C.P. 1629); 6 Holdsworth, A HISTORY OF ENGLISH LAW, 435-436, 453, 456-457 (1924).  The tradition of *pro hac vice* admission in this country dates to before the revolution when Andrew Hamilton, a leader of the Philadelphia bar, was allowed to defend John Peter Zenger in New York in 1735 in one of colonial America's most famous cases.  Similarly, Clarence Darrow appeared *pro hac vice* in the famous Scopes trial in Tennessee where he opposed another well-known, out-of-state lawyer, William Jennings Bryan.  More recently, out-of-state lawyers Thurgood Marshall, Constance Motley and Spottswood Robinson, before their appointments to the federal bench, appeared in courts throughout the South. *See* Kluger, Richard, SIMPLE JUSTICE, Vintage Books, NY (1975).  In each of these instances, the attorney admitted *pro hac vice* was either lead counsel or argued before the court.  If this court tried to list all of the reasons for a *pro hac vice* appearance, it would

3

miss some.  The question is not whether admitting lawyers *pro hac vice* is a good thing, but whether a lawyer who is admitted for the purposes of a single case should be required to be physically present when a matter in his/her client's case is set for hearing, unless he/she, in advance, shows good cause for his/her absence.

Most courts have reservations from time to time about the large number of lawyers, local or foreign, on their docket clerk's mailing list in a particular case.  This court can discern no real reason for a lawyer whose participation in a case will be limited to research, brief writing or drafting pleadings or discovery requests to pay $50.00 for the mere privilege of receiving duplicative mailings from the clerk's office and being able to tell his/her friends that he/she has been admitted to practice in the Northern District of Alabama.  The court fully understands that litigation cannot proceed without office work as well as with courtroom work, with researchers as well as with mouthpieces, but researchers do not need to appear formally and do not need to apply for the right to appear formally.  A briefcase carrier, if he/she is called upon to carry a briefcase, may justifiably seek admission *pro hac vice*, but briefcase carriers go to court.  If a reason for *pro hac vice* admission is to give a neophyte lawyer trial experience, where is the trial experience if he/she never sees the chambers or the courtroom?  Lawyers who are needed in a case should be truly involved and should expect to be at the courthouse when

4

issues are to be presented. Asking for a standing order to excuse *pro hac vice* lawyers from appearing is the same thing as asking this court to countermand or to withdraw its standing order deliberately providing to the contrary.

This court's routine *pro hac vice* order is designed, *inter alia*, to slow down the wholesale, unnecessary, expensive, phantom participation by lawyers who could easily do what they do without paying $50.00 to this court. Not only should a trial lawyer meet the trial judge, but occasionally the trial judge should meet the trial lawyer. This court would not have entered its order requiring *pro hac vice* lawyers to be present at hearings if the court were willing to waive that requirement by a blanket order exempting some lawyers, but not others.

The fact that neither plaintiffs nor defendant requested oral argument prior to the August 22, 2003 motion docket, stands in the way of this court's doing anything about the fact that none of the five *pro hac vice* admittees in this case appeared on that date. The words in the clerk's preface to the motion docket created an ambiguity that cannot be squared with this court's routine order that admits a lawyer *pro hac vice* on condition that he/she be physically present at hearings. This patent ambiguity must be resolved in favor of the *pro hac vice* admittees. The motion docket language employed by the clerk will be amended in the future so as to eliminate any possibility that the current misunderstanding will

5

reoccur and to make clear that the routine order means what it says.

DONE this _27th_ day of August, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE