```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ALABAMA
                        MIDDLE DIVISION

VAE NORTRAK NORTH AMERICA,   }
INC., et al.,                }
                             }
     Plaintiffs,             }     CIVIL ACTION NO.
                             }     03-AR-1480-M
v.                           }
                             }
PROGRESS RAIL SERVICES       }
CORPORATION,                 }
                             }
     Defendant.              }
```

## MEMORANDUM OPINION

Before the court is the renewed motion for summary judgment by defendant, Progress Rail Services Corporation ("Progress"), seeking dismissal of the patent infringement claims brought by plaintiffs, VAE Nortrak North America, Inc. and VAE GmBH (collectively "Nortrak"). The motion for summary judgment comes in light of this court's March 1, 2005 memorandum opinion and order construing the patent claims of Nortrak. Now the court is asked to apply its constructions of those claims to Progress's accused device. Nortrak has not filed a motion for summary judgment, acknowledging that any ruling it seeks would depend upon fact finding by a jury with the burden of proof being upon it to prove the essential elements of its claims.  The court acknowledges that it has  communicated with Alfred Shaw, the court appointed expert, just as it did during and after the so-called *Markman* hearing.

1

**Facts**

Unlike most summary judgment motions heard by this court, a thorough recitation of the precise factual circumstances is not called for. Because there remain some questions of fact to be resolved, there is no need to engage in a drawn out discussion of all pertinent "facts," that is, if the court is careful to note where questions of fact intersect with questions of law. The court will nevertheless give an abbreviated background of the case.

Nortrak's claims are based on two of its patents: patent no. 5,148,980 (hereinafter, "980") and patent no. 5,176,318 (hereinafter, "318"). Both of these patents cover adjustable guard rail devices for use in the railroad industry. The function of guard rails is to keep the wheels of a train on a particular path, protecting both the train itself and the surrounding track work. Guard rails are often necessary on curves, switches, turnouts, or elevated track sections, where trains have a tendency to derail. The attractiveness of the 980 and 318 patented devices is that they allow the adjustment of the guard rails after wear and tear with less work than was previously required to adjust or replace other earlier versions of guard rails.

On March 1, 2005, after the *Markman* hearing, this court entered an order (as well as a memorandum opinion) construing the terms of the 318 and 980 patents owned by Nortrak. The court invited an interlocutory appeal, but neither party took the bait.

The interpretations the court stated in its order delineate the scope of its summary judgment consideration and are an obvious precursor to this opinion, if not a perfect predictor.[1]

### Analysis

Despite Progress's assurance that Nortrak has abandoned or waived its claims of literal infringement under both patents, the court is not absolutely sure that an abandonment has actually occurred. Nortrak has equivocally indicated that it has not abandoned its literal infringement theories.[2] The court treats the literal infringement claims as if they are still being pursued, but finds that summary judgment is appropriate for both patents to the extent the theory of recovery is literal infringement. Sensing that the real dispute is over the application of the doctrine of equivalents, the court will spend its time primarily assessing the claims in light of that doctrine.

### Legal Background

Summary judgment is only appropriate where there is no genuine issue of material fact. *See* Fed.R.Civ.P 56(c); *Celotex Copr. v. Catrett,* 477 U.S. 317, 322 (1986). The movant (Progress) bears the

---

[1] The court agrees in the correction to that order suggested by both Nortrak and Progress. The order should read "support bracket" rather than "support block."

[2] However, in portions of its response to the motion for summary judgment, it does appear that Nortrak at least recognizes that its energy would best be spent on other portions of the argument. In one portion, Nortrak in distinguishing an argument for equivalent infringement from literal infringement essentially concedes that the court's March 1 order makes a literal infringement, but not a infringement through the doctrine of equivalents, unlikely to prevail.

burden of demonstrating the absence of all genuine issues of material fact. *SRI Int'l v. Matushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985). The court is required to give all reasonable inferences to the non-movant (Nortrak) in determining whether a genuine issue of material fact exists.

There is a two-part process for evaluating whether an accused device infringes a patent claim: (1) interpretation of the patent claims to determine their scope and meaning, and (2) determination of whether the accused device is within the scope of the claim as interpreted by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The court has already construed, rightly or wrongly, the relevant reach of the 318 and 980 patents.

To prove a claim of infringement, a plaintiff must establish that the accused device actually includes each and every element of a claim, or includes its equivalent. *See, e.g.*, *Dolly, Inc. v. Spalding and Evenflo Companies, Inc.*, 16 F.3d 394, 397 (Fed. Cir. 1994). If an element of the claim or its equivalent is missing from the accused device, the accused device does not infringe the patent. *See, e.g.*, *Athletic Alternatives, Inc., v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996).

For an accused device to infringe a patent under the doctrine of equivalents, the difference between a particular element in the invention and the accused device must be "insubstantial" as viewed

by one of ordinary skill in the art. *Warner-Jenkinson v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-41 (1997). Although equivalency is usually a question of fact for the jury, if a plaintiff's theory of equivalence would "vitiate a particular claim element, partial or complete [summary] judgment should be rendered by the Court, as there would be no further material issue for the jury to resolve." *Id.* at 38, 39, n.8.  "[T]he application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Id.* at 29.

### The 318 patent

Progress has denied the applicability of the doctrine of equivalents to the claim on the 318 patent, but the court has disagreed with Progress on this point! Progress urges summary judgment on the 318 claim even assuming an application the doctrine of equivalents. Progress asserts that Nortrak has conceded that the accused device does not literally infringe the 318 patent, and Nortrak does not spend any effort disputing that contention. However, Nortrak does continue to assert that its 318 patent was infringed under the doctrine of equivalents. Progress contends that summary judgment is warranted because the accused device does not infringe under the doctrine of equivalents because: (1) in the Progress device the horizontal hook support is part of the support block, rather than the support bracket element, and; (2)the support

block does not have two "vertical" sides. As already explained, if any single element of a claim, or its equivalent is missing from the accused device there can be no infringement. *See Athletic Alternatives*, 73 F.3d at 1582. The first of these grounds is the more problematic for the court, so it is taken up first.

In considering the support bracket element, the court must re-examine the issue involving the doctrine of equivalents issue, an issue the court attempted to leave open until summary judgment. In its *Markman* opinion, the court found that the "support bracket" element included a horizontal hook support.[3] The court attempted to leave open, ever so slightly, the question of whether the so-called "all elements" rule requires a finding that the horizontal hook support "must" be a part of the support bracket element even under the doctrine of equivalents.[4]

Upon more intense consideration of the "all elements" rule, the court cannot conclude that a movement of the horizontal hook support to the support block element from the support bracket

---

[3] Perhaps the wording of the *Markman* order was too strong in suggesting that any accused support bracket "must include" a horizontal hook support. To the extent that order implied that the support bracket of an accused device must include a horizontal hook support for infringement under the doctrine of equivalents, the language used was beyond the scope of the court's *Markman* inquiry.

[4] The court, while noting that it was agreeing with Progress' position up to that point, respected Nortrak's claim that it preferred to argue that Progress' reading of the "all elements" rule was tortured at the summary judgment stage (which the court realizes was the appropriate time for such a determination), and left open further consideration until this point. Therefore, the court does not consider this to be a reconsideration of the position it seemingly took in its memorandum opinion and order, but rather a final look at the issue at the appropriate time.

constitutes a violation of the "all elements" rule. At the *Markman* stage, this court used the word "element" to describe the horizontal hook support. Looking to the relevant law, the court determined that the doctrine of equivalents could not be so broadly construed as to allow the elimination of an element "in its entirety." *Warner-Jenkinson*, 520 U.S. at 29. However, it is now clear to the court that it did not fully appreciate the boundaries of the "all-elements" rule. The meaning of the term "element" has become clearer upon further study:

> "'Element' may be used to mean a single limitation, but it has also been used to mean a series of limitations which, taken together, make up a component of the claimed invention. In the all elements rule, 'element' is used in the sense of a *limitation* of a claim.... An equivalent must be found for every limitation of the claim **somewhere in the accused device, but not necessarily in a corresponding component**, although that is generally the case.

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 88 F.2d 1251, 1259 (Fed. Cir. 1989) (emphasis added). If the court was confused, that confusion was largely in nomenclature, rather than substance. Looking at the 318 patent, it now seems clear that the horizontal hook support is a "limitation" of a claim, but that it is not rightfully called an "element." The "support bracket" element is made up of a "series of limitations," one of which is the horizontal hook support. Progress maintains that moving the horizontal hook support to the support block violates the "all elements" rule because it would eliminate an element altogether.

The court does not see it that way. The "all elements" rule only requires that an equivalent for every limitation of a claim exist in the accused device. *See id.* The *Corning Glass* decision clarified the meaning of the term "element" in the context of the "all elements" rule. *Dolly,* 16 F.3d at 399. In light of these cases, it is possible, under the "all elements" rule, for an accused device to infringe a patent even where it has shifted a limitation from one claim "element" to another.

The "horizontal hook support" is best described as a "limitation." A reasonable jury could find that the Progress device shifts the "horizontal hook support" of the Nortrak device from the "support bracket" to the "support block" and therefore infringes under the doctrine of equivalents, if not literally. Progress notes that in *Dolly* the court found **no infringement** because "a vital claim limitation [was] absent from the accused device." *Id.* at 398. Progress argues the same situation exists in the instant case. However, such is not the fact situation here. In this case, a claim limitation has arguably been moved from one claim element to another. The claim limitation is not "absent" from the Progress device, but rather moved to another element.[5] In that regard, this exact situation is distinguishable from *Dolly.* Allowing the placement of horizontal hook support in the support

---

[5]The court is giving all reasonable inferences to the non-movant, Nortrak.

block element, rather than the bracket element, does not constitute "such broad play as to effectively eliminate that element in its entirety." *Warner-Jenkinson*, 520 U.S. at 29. Therefore, the movement of the "horizontal hook support" does not provide a basis for granting Progress' motion for summary judgment.

Looking next to the "support block" element of the 318, the court again determines that summary judgment is not appropriate. Progress argues that, even under the doctrine of equivalents, the horizontal surfaces of its support block cannot infringe the 318's requirement of a first and second "vertical surface." The court agrees that the Progress device does not literally infringe on the 318 patent. However, under the doctrine of equivalents, the court is required to go through a more thorough analysis of the competing devices.

Progress alleges that a change in the support block element such that the surfaces engaging the Pandrol clip go from vertical to horizontal is a substantial change. As was previously noted, for an accused device to infringe a patent under the doctrine of equivalents, the difference between a particular element in the invention and the accused device must be "insubstantial" to one of ordinary skill in the art. *Warner-Jenkinson* 520 U.S. at 39-41. Nortrak, however, notes that the technical experts in this case have suggested that the form, function, and result of the horizontal support block and surfaces are not substantially

different than the 318's vertical surfaces. This testimony creates an issue of material fact as to whether the difference between the 318 patent and the accused device is "insubstantial." Therefore, summary judgment is inappropriate on the 318 patent. A reasonable fact finder could find for Nortrak under its doctrine of equivalents theory. To the extent Nortrak may be still pursuing a claim for literal infringement, summary judgment is appropriate.

### The 980 patent

Progress also asks the court to grant summary judgment against Nortrak's 980 patent claim. Progress provides three grounds upon which its device cannot infringe the 980 patent, even under 35 U.S.C. § 112, ¶ 6 "means plus function analysis." Progress claims: (1) that because the mounting plate of the accused device does not have a "perforation" through it, it cannot infringe the 980 patent, even under the doctrine of equivalents; (2) that the "bracing member" cannot be a Pandrol clip, even in light of "means plus function" analysis; and (3) that a Pandrol clip cannot infringe the "retaining means" element, even under "means plus function" analysis.[6] These three arguments are taken up in turn.

Progress fails to convince the court that the opening or "goal post" like slot in its device does not meet the description and is

---

[6]Progress notes that Nortrak's defense to its non-infringement arguments takes an "as a whole" approach to equivalence in the 980 patent. Nortrak does, to some extent, try to argue that the accused device operates as an equivalent, on the whole, to the 980 device. The court, of course, looks at the question of equivalence on an element by element basis so as to avoid running afoul of the "all elements" rule.

not a possible equivalent of the "perforation" called for in the 980 patent. Claim 1 of the 980 patent requires the mounting plate to have a "perforation" in it. In its *Markman* order, the court tentatively held that a "perforation" is a "hole or bore through the plate." The Progress device has no hole. Rather, it has an open space below the plate to allow for the passage of a hook or claw.[7] Nortrak claims that, despite the lack of a "hole," the Progress device nevertheless infringes the 980 patent under the doctrine of equivalents. There is a question of material fact about whether Progress' opening underneath the plate is substantially different from the "hole or bore" discussed in this court's *Markman* order. Gary Click, Nortrak's expert, testifies, by declaration, that the Progress device is "substantially the same in structure, function and result" as the 980 patent.[8] This is enough to create an issue of material fact. Summary judgment is therefore not appropriate to the extent based on the "perforation" limitation of the "mounting plate" element.

The "bracing member" element requires a somewhat different and more difficult analysis. In its *Markman* order, the court ruled that

---

[7] It is unclear whether Nortrak is still attempting to claim literal infringement of the 980 patent. If it is, the Progress device does not literally infringe the 980 patent as a matter of law. Summary judgment is appropriate to a theory of literal infringement as it applies to the entire 980 patent. *See Athletic Alternatives*, 73 F.3d at 1582.

[8] It is the court's opinion, too, that the Progress "goal post" design is not substantially different from a "hole or bore," as the court defined "perforation." Progress has not provided any real rebuttal to the assertion of Gary Click, nor to Nortrak's basic argument that there is plainly little difference between a hole and an opening.

11

the "bracing member" was a "means plus function" claim element governed by 35 U.S.C. § 112, ¶ 6. Equivalence under § 112, ¶ 6 is not coextensive with the doctrine of equivalents. *See Warner-Jenkinson*, 520 U.S. at   A means-function element can be infringed *literally* by a structure that performs the same function and which is the same as or an equivalent to the structures disclosed for performing that function. *See* 35 U.S.C. § 112, ¶ 6. The court, in its *Markman* opinion, performed the two step claim construction for a "means plus function" claim limitation, finding that the "bracing member" performed the function of bracing the claw arm, and that the corresponding structures described in the specifications were a "leaf spring, spring ring, a helical spring, or a chucking wedge." In that same order, the court ruled that "any other kind of spring" could not be claimed as an equivalent to the disclosed structures for a "bracing member" because the claim element was substantially rewritten during the patent prosecution process. Nortrak asks the court to revisit that decision.[9] The court

---

[9]Nortrak points out that the court made a mistake with regard to the record in its *Markman* order. On page twenty-nine of its memorandum opinion, the court mentions that the change from "spring" to "bracing member" was made to avoid prior art and to clearly define what the invention included. Nortrak correctly asserts that no prior art was cited against the "bracing member" of the 980 patent. Therefore, to the extent that ruling relied on the citation of prior art against the claim element, the court does reconsider and remove that justification.

However, this does not change the court's view of the dispute over whether or not the doctrine of equivalents applies to this claim element. Even though the function is written as a means plus function element, prosecution history estoppel can apply. *See, e.g. Alpex Computer Corp. v. Nintendo Co., Ltd.,* 102 F.3d 1214 1220-21 (Fed. Cir. 1996). The *Festo* presumption that an equivalent has been surrendered by a narrowing amendment is rebuttable, but the patentee bears the burden of showing that a particular equivalent was not surrendered by the amendment. *Festo,* 344 F.3d at 1368. Nortrak has provided

respectfully declines to do so here.

Nortrak claims that a § 112, ¶ 6 element is to be read *literally* as including the corresponding structures listed in the specifications "and equivalents thereof."[10] However, because prosecution history estoppel is applicable here, such may not be true in this case.[11] The court believes that consistent with the *Markman* ruling, the Pandrol clip cannot infringe the "bracing

---

nothing which rebuts the *Festo* presumption as it regards other "springs." In fact, given that Nortrak goes out of its way to discuss how well-known the Pandrol clip was at the time, and how easy it would be to change the design to accommodate a Pandrol clip, it is difficult to imagine which of the noted avenues for rebuttal Nortrak could take advantage of. Because Nortrak has consistently failed to provide **any** rebuttal to the claim that the amendment was narrowing, the court will not do the work for it now. The closest Nortrak comes to doing so is to call the amendment "for clarification," however, the court remains unconvinced, perhaps because Nortrak never made such an argument, that "clarification" does not relate to the patentability of the invention, especially when that quest for clarity requires the claim to be narrowed. Surely a patent application will be rejected if the patent applicant fails to adequately define the limits of his invention.

[10] Progress claims that Nortrak has conceded that there is no literal infringement of the "bracing member." The court goes through the analysis as if Nortrak has not abandoned its claim of literal infringement under § 112, ¶ 6, however, the court suspects that Nortrak has actually abandoned that theory. Regardless, the court finds it exceedingly difficult to unpack Nortrak's theories of infringement, which if they both exist, tread very heavily on the same ground without clear differentiation, at least as regards this element.

[11] The attorneys on both sides have failed to provide the court with much guidance on how to proceed through this question. Progress tells the court that prosecution history estoppel does apply, and that, therefore, the Pandrol clip cannot be an equivalent. The court is inclined to agree, but does not find any analysis from Progress to assist in confirming this judgment. Nortrak, on the other hand, merely suggests that the court's *Markman* ruling was wrong and must be changed, and spends very little time explaining why prosecution history estoppel does not bar a Pandrol clip, or why a Pandrol is still an equivalent. Perhaps Nortrak should have taken the court up on its offer of interlocutory appeal despite its certainty that such an appeal would not be reviewed by the Federal Circuit at this stage.
    All sides seem to agree that the Pandrol clip can function as a "spring." As the court understands the law, and its ruling, prosecution history estoppel precludes Nortrak from claiming that a Pandrol clip is a structural equivalent of any of the "disclosed structures" under 35 U.S.C. § 112, ¶ 6. Therefore, Nortrak must resort to the doctrine of equivalents analysis previously noted, and undertaken, earlier in this opinion.

member" element literally as a "structural equivalent" because it is fairly characterized as a "spring" by those skilled in the art (like Messrs. Click and Kuhn).This is all the court must find to grant summary judgment for Progress on the 980 patent.

Assuming *arguendo* that prosecution history estoppel does not bar the Pandrol clip from infringing the "bracing member," Nortrak cannot show that the change from one of the disclosed structures to a Pandrol clip is "insubstantial." "To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure." *Pennwalt Corp. v. Durand-Wayland*, *Inc.,* 833 F.2d 931, 934 (Fed. Cir. 1987)(en banc) (emphasis in original). Structural equivalence under § 112, ¶ 6 exists only if the differences between the accused device and the disclosed structure are "insubstantial." *See Chiuminatta Concrete Concepts, Inc v. Cardinal Indus., Inc*, 145 F.3d 1303, 1309 (Fed. Cir. 1998). The stated function is "bracing" to hold the claw in place. The disclosed structures are a spring ring, a leaf spring, a helical spring, and a chucking wedge. Nortrak notes, and all the experts agree, that Pandrol clips have a spring like function.

Both Progress and Nortrak agree that changes would have to be made to the design of the 980 device in order to make it workable

14

with Pandrol clip. Nortrak assures the court that this is "immaterial."[12] However, as the court understands it, this does matter: the question is whether such a change in the design for a Pandrol clip would be "insubstantial." An "insubstantial change" is a change "which adds nothing of significance to the structure, material or acts disclosed in the patent specifications." *Valmont Indus., Inc. v. Reinke Mfg. Co.,* 983 F.2d 1039,1043 *(*Fed. Cir. 1993). Gary Click's affidavit explains to the court that the Pandrol clip is "equivalent in structure, function and result" to the "bracing member."[13] However, Click does not attest that the Pandrol clip is insubstantially different from the disclosed structures, listed in the specifications for performing the bracing function. Further, Click's assertion that the 980 patent could easily be altered to allow a Pandrol clip by one of ordinary skill in the art does not answer the question of whether such a change would be "insubstantial." A great many ordinary railroad trackage experts could perform feats of engineering that, while *easy* for them, would not qualify as insubstantial changes. The court finds that a change to a Pandrol clip, from any one of the disclosed structures would be substantial in that it would require the introduction of a Pandrol clip which would also require a specially

---

[12] Bizarrely, though, Nortrak relies extensively on the assertion that all the changes it would have to make would be easy to provide proof that the changes are insubstantial for equivalence purposes.

[13] The court reads this as a conclusory assertion that it meets the legal test of equivalence.

15

designed support block (as seen in the 318) so that the Pandrol can bring to bear its unique manner of both bracing and retaining against immense force. Easy as such a change might be for one skilled in the field, the re-engineered device would have a substantially different bracing member from the one disclosed in the 980 patent.[14] That Nortrak could have hypothetically claimed such ground at the time seems both beside the point, and currently unsubstantiated.[15]

Finally, the doctrine of equivalents will not allow the "bracing member" to reach the Pandrol clip of the accused device. As was mentioned previously, the doctrine of equivalents and the level of equivalence allowed under 35 U.S.C. § 112, ¶ 6 are similar, but not coextensive. *See Chiuminatta*, 145 F.3d at 1310. The doctrine of equivalents can allow a patent holder to claim for changes to a claim limitation which were insubstantial, but based on technological advancement after the patent is formed, is readily available. "The doctrine of equivalents is necessary because one

---

[14]As Progress notes, and this court has previously wondered aloud, the "insubstantial" changes Nortrak claims it could "easily" make to the 980 patent to make it accept a Pandrol clip seem to call into question the validity of the 318 patent, which made many of the very changes which Nortrak is discussing.  If all of those changes are covered in the 980 patent, then the PTO should not have allowed the 318 patent to cover the same territory. However, that issue is not before the court and is noted merely as a useful reminder of the boundaries of the particular patents at issue.

[15]The *Wilson* hypothetical claim analysis that Nortrak suggests as a solution for its 980 claim leaves the court puzzled. If this is a viable line of reasoning, Nortrak fails to lay out much of the standard, and in fact, fails to lay out and alternative claim upon which the court could rely in making a ruling. The court is not going to invest substantial time in determining and drawing out the contours of a hypothetical claim when Nortrak has failed to do so itself.

16

cannot predict the future." *Id.* Here, however, all sides admit that the Pandrol clip was well-known in the United States at the time the 980 device was patented. While a variant "bracing member" based on new technology could not have been disclosed in the patent, a Pandrol clip could easily have been added to the specifications as a corresponding structure. However, Nortrak failed to do this. Its explanation as to why it did not do so is appealing, but immaterial. Where the technology claimed predates the invention itself, "a finding of non-equivalence for § 112, ¶ 6 should preclude a contrary finding under the doctrine of equivalents." *Id.* at 1311. Thus, because the structure of the Pandrol clip differs substantially from the disclosed structures, and the Pandrol clip was without question available at the time the 980 device was patented, the doctrine of equivalents cannot be used to incorporate the Pandrol clip as a bracing member. While the doctrine of equivalents can provide protection against the future, there is no reason here "why a patentee should get two bites at the apple." *Id.*

If an element of the claim or its equivalent is missing from the accused device, the accused device does not infringe the patent. *See, e.g., Athletic Alternatives, Inc.*, 73 F.3d at 1582. Because there are no issues of material fact on infringement of the "bracing member" claim limitation, summary judgment is appropriate for Progress on this claim.

Similar issues appear in considering the "retaining means." In

its *Markman* order, the court construed the "retaining means" as a "means plus function" element. The only structures disclosed for performing the retaining function were a nut and a chucking wedge. In order for the accused device to literally infringe the "retaining means" element, the court must find either a chucking wedge or a nut or a structural equivalent thereto that performs the retaining function.

Once again, there is dispute about whether or not Nortrak has abandoned its claim of literal infringement of this element. Nortrak asserts that any means for retaining the hook will be good enough to literally satisfy the retaining means element. However, such a conclusion constitutes a misunderstanding of the patent law, or at least of the court's claim construction at the *Markman* hearing. To establish literal infringement of the "retaining means," Nortrak must "compare the accused structure *with the disclosed structure*, and [the court] must find equivalent *structure* as well as *identity* of claimed *function* for that structure." *Pennwalt Corp.,* 833 F.2d at 934. Nortrak illustrates that the function of retaining can be performed by the the "central portion" of the Pandrol clip. However, again, as the court understands the 980 patent, this would require a change in the substance of the 980 patent. Just as the 318 patent requires a "support block" with two vertical sides to engage a Pandrol clip, the 980 patent would require a similar piece in order for the

18

Pandrol clip to perform its bracing and retaining functions.[16] No such piece is disclosed in the 980 specifications, and cannot be listed as an insubstantial change to the patent elements. Thus, while such a change might have been easy, or within the abilities of one ordinarily skilled in the art, the court cannot see why it matters. The change makes the invention different in substance, and one ordinarily skilled in the art would not recognize that structure of the "bracing member" or "retaining means" included the structures which are included in the accused device. Therefore, this court finds that while a Pandrol clip possibly could perform the retaining function, the difference between the Pandrol clip and the nut or chucking wedge is not "insubstantial." The court is reminded of *United States v. Tedford*, 403 F.3d 1159, 1161 (10th Cir. 2005), in which the Tenth Circuit, in recently affirming the trial court's imposition of a lengthy prison sentence, said:

> To be **clear**, we do not hold that the Defendant's sentence, which is more than four times the outside limit of the recommended Guideline range, to be **reasonable**. We hold that it is **not unreasonable**...
> (emphasis added).

While failing to understand the difference between "reasonable" and "not unreasonable", there must be such a difference, at least in

---

[16] Progress also argues that the use of a Pandrol clip to perform the bracing and retaining functions would fail under the doctrine of equivalents because it would violate the all elements rule by essentially eliminating the "retaining means" element. First, the court does not see how the retaining means element would be eliminated. Second, "[e]quivalency can also exist when separate claim limitations are combined into a single component of the accused device." *Dolly*, 16 F.3d at 398. There is no "all elements" rule problem here that the court can discern.

the Tenth Circuit, so this court makes clear its conclusion that the differences here between the parties' devices disputed under the 980 patent are both "not insubstantial" and "substantial," if there is a difference.

An appeal to the doctrine of equivalents is also unavailable for the reasons stated to Nortrak as to the bracing member, and in light of the *Chiuminatta* case.[17]

### Conclusion

In light of the foregoing, the court finds that Nortrak can proceed to trial only on its claim under the 318 patent under the doctrine of equivalents and not literal infringement. A separate order implementing this decision will be entered.

DONE this ___23rd____ day of June, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[17] Where the technology claimed predates the invention itself, "a finding of non-equivalence for § 112, ¶ 6 should preclude a contrary finding under the doctrine of equivalents." *Chiuminatta*, 145 F.3d at 1311.